DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Lydia Lauck, has filed this original action in mandamus requesting this court to issue a writ of mandamus to vacate its order denying her application for temporary total disability compensation and to enter a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission's order failed to satisfy the requirements of State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, and that this court should issue a limited writ returning the matter to the commission to issue an amended decision granting or denying the requested compensation that explains with clarity the commission's rationale in light of the treating physician's letter of March 2002.
 {¶ 3} Respondent-commission filed objections to the decision of the magistrate arguing that the commission was not required to consider reports that were submitted after the hearing, citing to this court's decision in State ex rel. Bailey v. Indus. Comm.
Franklin App. No. 02AP-968, 2003-Ohio-2311. However, as noted by relator in its memorandum in response to respondent's objections, counsel for the commission did not deny at the hearing before the magistrate that the report in question in this case was, in fact, submitted to the hearing officer at the hearing without objection. As such, we agree with the magistrate that with the updated medical report before the commission, it was an abuse of discretion for the commission to fail to explain why it chose to rely on a prior, retracted medical opinion. Accordingly, the objections are overruled.
 {¶ 4} Following independent review pursuant to Civ.R. 53, we find that the magistrate had properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, we issue a limited writ returning the matter to the commission to issue an amended decision, granting or denying the requested temporary total disability compensation in compliance with the requirements ofNoll.
Objections overruled; writ granted.
Bryant and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Lydia Lauck, : Relator, : v. : No. 03AP-738 Industrial Commission of Ohio : (REGULAR CALENDAR) and Horses Unlimited, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 30, 2004 Gruhin Gruhin, Michael H. Gruhin and Gloria S. Gruhin,
for relator.
Jim Petro, Attorney General, and Keith D. Blosser, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Lydia Lauck, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for temporary total disability ("TTD") and to issue an order granting the requested compensation.
Findings of Fact:
 {¶ 6} 1. On July 6, 1997, Lydia Lauck ("claimant") sustained an industrial injury while working with horses at Horses Unlimited, Inc., and her workers' compensation claim was allowed for closed fractures of the metatarsals of three right toes, sprained sacroiliac, sprained right wrist, bilateral shoulder sprain, sprained left ankle, and fibromyalgia.
 {¶ 7} 2. On August 6, 1997, Dr. Terry of the orthopedic clinic at Lima Memorial Hospital reported that, in addition to the allowed fractures of the right foot, claimant suffered from degenerative rotator cuff disease of both shoulders, impingement syndrome of the right shoulder, and early degenerative lumbar disc disease. Although claimant complained of left ankle pain, Dr. Terry found no cause for it, noting normal X-rays and full active range of motion with no external tenderness.
 {¶ 8} 3. On August 20, 1997, Dr. Terry noted that the fractures had united and that claimant could probably return to work on August 25, 1997.
 {¶ 9} 4. On August 26, 1997, the physical therapist reported that claimant had attended only two times and did not feel a need to continue with physical therapy.
 {¶ 10} 5. On September 17, 1997, Dr. Terry noted that there was still some swelling and pain when claimant was up and about throughout the day. He decided to keep claimant off work longer for her to accommodate being out of the cast. He estimated a return to work on October 1, 1997.
 {¶ 11} 6. On October 10, 1997, the physical therapist stated that claimant had attended two sessions but cancelled the next two. The therapist opined that, based on how well claimant had been doing at the last session, she would do well independently.
 {¶ 12} 7. In January 1998, claimant consulted Kurt A. Kuhlman, M.D., who found "multiple somatic symptoms." Claimant complained of difficulty walking, low back pain, shoulder pain, headaches, and almost constant neck pain. Claimant stated that she "did return to work" on November 13, "1998" (sic: 1997) at Horses Unlimited, owned by her stepdaughter, but she had been unable to perform all her duties. Dr. Kuhlman found that claimant suffered from "moderate to severe depression." He also found that her legs were different lengths, causing sacroiliac joint dysfunction. Dr. Kuhlman opined that, with the recommended treatment, claimant's conditions would reach maximum medical improvement ("MMI") in two to three months.
 {¶ 13} 8. On March 3, 1998, Leslie Coverdale, R.N., sent a letter to claimant noting failure to attend three therapy treatments.
 {¶ 14} 9. The file shows no return visit to Dr. Kuhlman or other medical treatment through the remainder of 1998. In December 1998, claimant moved to Florida.
 {¶ 15} 10. Claimant stated that, after she was in Florida, she contacted Dr. Kuhlman in April 1999 for a prescription refill but that he declined, stating that he could not prescribe medications for her now that she was living in Florida.
 {¶ 16} 11. Claimant states that she tried to have her Ohio workers' compensation claim "transferred" to the Florida workers' compensation system but was unsuccessful, and was told that she was still covered under the Ohio system.
 {¶ 17} 12. Beginning in February 2001, the record shows contact by claimant with Protegrity, a managed care organization ("MCO"). It appears that claimant began contacting the Bureau of Workers Compensation ("BWC") in April 2001.
 {¶ 18} 13. In 2001, claimant was referred to Edward Demmi, M.D. Claimant sent a letter to Dr. Demmi enclosing a history of her injuries and illness. She wrote that her medical condition had deteriorated and that she had new symptoms: "[M]y arms are very bad — including elbows and wrists — I cannot even type this letter without excrutiating pain in my right arm. I also think I feel bone masses or bumps developed in my [illegible] — my left hip is also a new development."
 {¶ 19} 14. On May 3, 2001, claimant visited Dr. Demmi complaining of pain of the elbow, neck, shoulders, wrist, ankle and foot. On examination, Dr. Demmi found tenderness over the trapezius, scapular border, and over the "mid-spine." Both shoulders had full range of motion with some discomfort. Upper extremity strength was 4/5 on both sides. There was diffuse lumbar tenderness but no spasms. Straight-leg raising was negative. Deep tendon reflexes were 2+/4+. There were no focal neurologic deficits. Gait was normal. Dr. Demmi concluded that the "patient's condition seems to be stable, but is subjectively worsening." He prescribed no medication or treatment but said he would review her complete medical chart before final disposition. In addition, Dr. Demmi completed a "work duty" form restricting lifting due to "Deg Lumbar Disc Dz" (degenerative lumbar disc disease) and fibromyalgia.
 {¶ 20} 15. On May 10, 2001, Dr. Demmi again saw claimant for conditions including "Post-traumatic fibromyalgia following an injury on 7/6/97." He stated that he was asked to determine whether the "current symptoms are related to her injury that resulted in 7/6/97." Dr. Demmi noted particularly that claimant did not seek to renew her medications from Dr. Kuhlman until April 1999, and that claimant did not contact the workers' compensation representative for a long time, stating she did not know she could have care. Dr. Demmi set forth no plan of treatment but completed a form stating that lifting was restricted to ten pounds due to "Deg Lumbar Disc Dz" and fibromyalgia.
 {¶ 21} 16. On May 10, 2001, claimant contacted the BWC, stating that she had never returned to work at any time. She asserted that Dr. Kuhlman said she could not get prescriptions because she had moved but that she knew now that she could obtain treatment in Florida under her Ohio claim. She asked for help in getting treatment. In subsequent correspondence, claimant continued to indicate difficulties finding a doctor and obtaining treatment.
 {¶ 22} 17. In June 2001, Dr. Demmi provided an update based on his review of the medical file. He stated the following conclusion:
* * * It is my opinion that the interval of nine months without requiring treatment or medications does not fit any reasonable medical probability that her current symp-tomatology is related to her accident of 7/6/97.
 {¶ 23} 18. Based on Dr. Demmi's opinion, the MCO did not approve treatment.
 {¶ 24} 19. In June 2001, Dr. Demmi completed another "work duty" form restricting lifting due to "L Disc Deg. Disease" and fibromyalgia. Later in June, he again stated that lifting was restricted due to "Deg Lumbar Disc Dz" and fibromyalgia.
 {¶ 25} 20. In July 2001, Dr. Demmi completed a form restricting lifting due to neck sprain, right shoulder sprain, and fibromyalgia.
 {¶ 26} 21. The MCO continued to deny treatment based on Dr. Demmi's opinion of June 2001, and claimant continued to correspond with the BWC regarding approval for medical care.
 {¶ 27} 22. In August 2001, Dr. Demmi filed a C-84 certifying TTD commencing in October 1997 but with no end date. When asked to state an estimated return-to-work date, he left it blank. When asked to state objective clinical findings, he stated: "Tenderness." Under subjective findings, he stated: "pain."
 {¶ 28} 23. On August 29, 2001, Dr. Demmi completed a form restricting lifting due to "Chronic Neck, Rt Shoulder LB P[ain]."
 {¶ 29} 24. In October 2001, a file review was performed by Dr. Alan Palmer in regard to TTD. He concluded:
OPINION: In my opinion a period of inability to work related to the claim beginning "4-99" is not sufficiently documented as related to the claim; the inference is that the IW could not work then because she didn't know she could get medical care to substantiate an inability to work. In my opinion, pending further and continuing documentation, a medical inability to work related to the claim is documented from 5-3-01 to 8-3-01.
 {¶ 30} 25. On a "work duty" form dated November 15, 2001, Dr. Demmi restricted work based on "Deg Lumbar Disc Dz" and fibromyalgia.
 {¶ 31} 26. In December 2001, Dr. Demmi noted that recommended physical therapy for an allowed condition had not yet been authorized. On a form dated December 13, 2001, he restricted work based on "Deg Disc D" and "Post Traumatic Fibromyalgia."
 {¶ 32} 27. On January 10, 2002, Dr. Demmi found tenderness of the thoracic and lumbar spine. With respect to the shoulder and feet, he found no evidence of spasm, fasciculation or atrophy. He found normal reflexes and no decrease of strength in the upper and lower extremities. He prescribed medication for depression, continued to recommend physical therapy, and restricted lifting.
 {¶ 33} 28. On January 11, 2002, Dr. Demmi completed a C-9 form recommending physical therapy for treatment of allowed conditions including fibromyalgia. He stated that there was a causal relationship between the diagnoses and the industrial accident.
 {¶ 34} 29. On January 11, 2002, Dr. Demmi filed another C-84 form, certifying TTD from May 3, 2001 to July 1, 2002. For objective clinical findings, he listed "Tenderness," and he listed "pain" for subjective findings.
 {¶ 35} 30. On March 30, 2002, Dr. Demmi reported the following diagnoses:
1. Status post right 2nd, 3rd and 4th metatarsal fractures from a horse related accident in Ohio on 7/9/97.
2. Post traumatic fibromyalgia diagnosed in Ohio secondary to her right 2nd, 3rd and 4th metatarsal fractures.
3. History of depression.
 {¶ 36} Dr. Demmi then explained his change of opinion regarding causation of fibromyalgia:
My initial diagnostic assessment of Ms. Lauck was made on the basis of available medical records, history given with physical examination and my knowledge of the inconclusive causal relationship of fibromyalgia and trauma * * *.
Since her condition has already been allowed by the Ohio Board of Worker's Compensation for post traumatic fibromyalgia, I feel that it is reasonable to allow and treat her condition with exercise and physical therapy as recommended. From the medical records that I have reviewed, her depression has not been allowed * * *.
 {¶ 37} 31. In May 2002, Dr. Demmi restricted lifting based on fibromyalgia, and in July 2002, he restricted lifting based on chronic shoulder pain.
 {¶ 38} 32. In July 2002, a staff hearing officer ("SHO") heard claimant's appeal regarding TTD and denied it. First, after noting that there were no issues regarding medical treatment, the SHO observed that the request for TTD was not filed until August 28, 2001, and that, accordingly, no compensation could be granted prior to August 28, 1999, based on the two-year limitations period. Second, the SHO discussed Dr. Kuhlman's opinion and the physical therapy report:
* * * The Staff Hearing Officer notes that there is over a two year gap in documented treatment in this claim and claimant has not demonstrated that she was treating with any physician between 08/28/1999 and 05/03/2001 when she had her first office visit with Dr. Demmi. Dr. Kuhlman's 01/30/1998 report suggested various treatments including a reconditioning program at St. Rita's Medical Center. Dr. Kuhlman was of the opinion that if claimant complied with his treatment suggestions, she would be at a level of maximum medical improvement within two to three months from the time of his 01/30/1998 report. The 03/03/1998 letter from Leslie Coverdale, R.N. to claimant noted that claimant had not attended three therapy treatments at St. Rita's.
Third, the SHO commented on Dr. Demmi's C-84 reports and office records, indicating they were not persuasive with respect to TTD caused by the allowed conditions:
A review of the C-84 reports and office records of Dr. Demmi indicates very few objective clinical findings to support claimant's alleged disability. There is a mention of subjective tenderness and pain. The 02/07/2002 office records of Dr. Demmi include the diagnosis of degenerative disc disease. The Staff Hearing Officer notes that as far back as 08/11/1997, the Lima Memorial Hospital records attributed claimant's shoulder symptoms to degenerative rotator cuff disease and back problems to degenerative lumbosacral disc disease, neither of which is allowed in this claim. The Staff Hearing Officer also notes that Dr. Demmi's records indicate that claimant suffers from the non-allowed condition of depression.
Last, the SHO commented on Dr. Demmi's report in which he found a lack of probability that the current symptoms were caused by the industrial injury.
Finally, the Staff Hearing Officer notes that claimant's own treating physician, Dr. Demmi, after a review of claimant's medical records was of the opinion that there was no reasonable medical probability that claimant's current symptoms were related to the 07/06/1997 industrial accident.
 {¶ 39} 33. Further appeal was refused.
Conclusions of Law:
 {¶ 40} Claimant argues that the commission abused its discretion in denying TTD compensation for the period beginning August 28, 1999. The claimant does not dispute the denial of compensation prior to that time.
 {¶ 41} First, claimant argues that the commission must have misconstrued her former duties because the evidence is overwhelming that she can no longer perform them. However, such evidence addresses only one factor. To prove TTD, a claimant must not only present medical evidence that she is unable to perform her previous duties, but must also present reliable medical evidence that this disability is caused solely by allowed conditions without regard to nonallowed conditions. State exrel. Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242. Further, TTD is designed to compensate an injured worker for the period of healing after an industrial accident, and claimant has the burden of proving that the current disability is temporary. E.g., State ex rel. Matlack, Inc. v. Indus. Comm. (1991),73 Ohio App.3d 648; R.C. 4123.56(A).
 {¶ 42} Here, claimant argues that the commission relied on an erroneous understanding of her former duties, but the order gives no indication that the commission considered the wrong duties. The commission, rather than basing its decision on an affirmative finding that claimant was able to return to her duties, relied on the inadequacy of the medical evidence submitted by claimant. Accordingly, the magistrate rejects the argument that the commission abused its discretion in relying on duties other than the duties of the former position of employment.
 {¶ 43} Second, claimant takes exception to the commission's discussion of Dr. Kuhlman's report and the physical therapist's report, arguing they were not relevant. The magistrate disagrees. Questions of recovery and healing are fundamental to a consideration of TTD, and a doctor's opinion regarding the patient's approach to maximum recovery at an earlier time has relevance to a TTD discussion. Dr. Kuhlman's report can reasonably be viewed as supporting a finding that claimant was close to MMI in January 1998 and would have achieved it by the spring of 1998 if she had completed the medical treatment and therapy made available to her. Claimant lived in Ohio until some point in December 1998, and the therapist's report could reasonably be interpreted as showing that, at a time when claimant had ready access to treatment, she chose not to have any. Further, the evidence shows that claimant also chose not to visit Dr. Kuhlman again or any other physician throughout 1998. The fact that claimant voluntarily discontinued medical care for more than a year, from early 1998 to April 1999, was subject to interpretation by the finder of fact. In sum, the magistrate finds no abuse of discretion in discussing the reports of Dr. Kuhlman and the physical therapist.
 {¶ 44} Next, claimant argues that the commission abused its discretion in failing to accept the opinion of Dr. Palmer and omitting mention of his report. However, the commission has no obligation whatsoever to discuss a medical report on which it has not chosen to rely. See, e.g., State ex rel. Bell v. Indus.Comm. (1995), 72 Ohio St.3d 575; State ex rel. Lovell v. Indus.Comm. (1996), 74 Ohio St.3d 250.
 {¶ 45} However, in situations where the basis of the commission's decision is not an affirmative reliance on evidence contrary to claimant's evidence but is based instead on a finding that claimant's evidence is unreliable, then the commission must explain why it found claimant's unopposed evidence unpersuasive. In this case, the commission discussed its reasons for finding Dr. Demmi's TTD opinion unpersuasive. The commission noted that Dr. Demmi's C-84 reports and office records included very few objective clinical findings to support the alleged disability and primarily mentioned subjective symptoms. Further, the commission observed that the office records included a diagnosis of degenerative disc disease, which was not allowed in the claim. Indeed, the majority of Dr. Demmi's certifications of functional restrictions were based in part on the nonallowed condition of degenerative lumbar disc disease.
 {¶ 46} Although the presence of a disabling nonallowed condition does not preclude a finding of TTD, and a physician can mention the presence of nonallowed conditions without his opinion being removed from evidentiary consideration, an award of TTD must be based exclusively on allowed conditions, and a physician must clearly opine that TTD has been caused by the allowed conditions in and of themselves without regard to nonallowed conditions. Bradley, supra; State ex rel. Stone ContainerCorp. v. Indus. Comm. (1997), 79 Ohio St.3d 163; State ex rel.Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158; Stateex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 47} In disability determinations, the commission is the sole evaluator of the credibility and weight of the evidence.Bell, supra; State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. Here, the commission as the finder of fact found Dr. Demmi's opinions to be unreliable, and it gave a reasonable explanation as to why it found his C-84s and office records unpersuasive as to TTD. In situations where both allowed and nonallowed conditions are present, the commission as the finder of fact must decide whether a certification of TTD is credible, and the courts uphold that determination unless a clear abuse of discretion is proved. E.g., Chrysler (upholding commission's conclusion that evidence supported TTD).
 {¶ 48} In the present action, the magistrate has not reached the conclusion that Dr. Demmi's C-84 reports cannot constitute some evidence as a matter of law but merely that the commission as the finder of fact was within its discretion to find the C-84 opinions unconvincing in light of the doctor's office notes and all the medical evidence in the file.
 {¶ 49} Claimant emphasizes the items of evidence in which Dr. Demmi clearly stated and explained his new opinion that her current symptoms were causally related to the industrial injury. The magistrate recognizes that Dr. Demmi, after initially stating his belief that the industrial injury had not caused the current symptoms, wrote a letter explaining that he accepted fibromyalgia as caused by the industrial injury. Indeed, the record indicates that treatment was approved for claimant based on Dr. Demmi's new, clarified opinion regarding causation.
 {¶ 50} The magistrate agrees that Dr. Demmi's amended opinion regarding causation was sufficient to support medical treatment, but evidence that claimant had symptoms caused by the industrial injury is not enough to prove TTD. A causal relationship between current symptoms and the industrial injury does not prove the existence of a disability that is both temporary (not yet at MMI) and total (preventing a return to the former position of employment) and that is based solely on the allowed conditions without regard to other disabling conditions. On C-84 forms, Dr. Demmi attempted to address disability based solely on the allowed conditions, but the commission found that the C-84s failed to provide adequate documentation of objective clinical findings of TTD caused solely by the allowed conditions. Such evaluations of evidence are precisely the type of evaluations that a finder of fact must make and has discretion to make.
 {¶ 51} Although fibromyalgia was allowed in the claim and apparently caused an array of symptoms, Dr. Demmi repeatedly relied on nonallowed conditions of neck sprain and lumbar disc disease with respect to functional limitations. Under all the circumstances, it was necessary for a certification of TTD to provide clear documentation that the alleged disability was temporary, that it was total, and that it was caused by one or more of the allowed conditions without consideration of nonallowed conditions. The commission found the documentation in the C-84s to be insufficient to prove all the required elements, and the magistrate finds no abuse of discretion in the commission's conclusion that Dr. Demmi's office records and C-84 forms were insufficient with respect to disability issues.
 {¶ 52} Claimant's last argument relates to the final part of the order, in which the commission stated as follows:
* * * [C]laimant's own treating physician, Dr. Demmi, after a review of claimant's medical records was of the opinion that there was no reasonable medical probability that claimant's current symptoms were related to the 07/06/1997 industrial accident.
This paragraph is problematic because Dr. Demmi had retreated from his initial opinion. In March 2002, he clearly set forth the change in his views as to causation. In the absence of any explanation from the commission as to why it rejected Dr. Demmi's recent opinion regarding causation, the above-quoted passage indicates that the commission overlooked or inadvertently ignored a crucial item of evidence. Cf. State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327. Here, the commission explicitly relied on a prior, retracted opinion (set forth in June 2001), thus appearing to be unaware of the March 2002 letter in which Dr. Demmi clearly and emphatically changed his opinion. Thus, the order does not provide a reasonably clear explanation of the commission's rationale, as required by State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 53} Accordingly, the magistrate recommends that the court grant a limited writ returning this matter to the commission to issue an amended decision, granting or denying the requested TTD compensation in compliance with the above-listed authorities.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE